IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BYRON PINEDA-MORALES, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 03-4297 (JBS) |
| v. | |
| CHARLES DE ROSA, III, <u>et al.</u>, | **OPINION** |
| Defendants. | |

APPEARANCES:

Byron Pineda-Morales
F.C.I. Oakdale
#37293-004
P.O. Box 5000
Unit E-2
Oakdale, LA 71463-5000
    Plaintiff <u>pro</u> <u>se</u>

Christopher J. Christie
United States Attorney
By:  Dorothy J. Donnelly
    Assistant U.S. Attorney
402 East State Street
Room 430
Trenton, NJ 08608
    Attorneys for Defendants

**SIMANDLE**, U.S. District Judge:

    Plaintiff, a federal prison inmate, brings suit seeking

monetary and injunctive relief for violations of his statutory

and constitutional rights to practice religion in accordance with

the Apostolic Faith Church.  Defendants Warden Charles De Rosa,

chaplains Ibrahim Aziz, Phil Harden, Heidi Kugler, and the Bureau

of Prisons (BOP) filed a motion to dismiss or for summary

judgment on all claims.  Defendants argue Plaintiff named

improper parties, failed to exhaust administrative procedures,

exceeded the statute of limitations, seeks impermissible

remedies, and failed to establish a prima facie case.

For the following reasons, Defendants' Motion is granted in

part and denied in part.

<u>BACKGROUND</u>

I.   <u>FACTUAL HISTORY</u>

Mr. Pineda-Morales was an inmate of the Federal Correction

Institution (FCI) at Fort Dix, New Jersey at the time the

Complaint was filed.[1] (Compl. at 2.) In or around March of 2000,

after transferring from the FCI's East Compound to the West

Compound, Plaintiff sought to practice his religious faith in

accordance with the Apostolic Faith Church.[2] (<u>Id</u>. at 3.)  Mr.

---

[1]Plaintiff, since filing his complaint, was transferred to
FCI Oakdale, in Louisiana. [Docket Item 32.]  Neither party made
submissions reflecting the impact of this move on the case.  This
transfer may render moot some of the equitable relief sought by
the Plaintiff.  <u>See</u> <u>Sutton v. Rasheed</u>, 323 F.3d 236, 248 (3d Cir.
2003)(recognizing that declaratory and injunctive relief is
generally mooted when an inmate leaves a facility).  However,
some of his requested declaratory and equitable relief may remain
relevant so long as remains a federal prisoner.

[2]As discussed <u>infra</u>, this motion for dismissal or summary
judgment is analyzed under Rule 56 as a motion for summary
judgment because matters outside the pleading were presented and
not excluded by this Court.  Fed. R. Civ. P. 12(b).  The facts
are as stated by Mr. Pineda-Morales because "the nonmoving
party's evidence 'is to be believed, and all justifiable
inferences are to be drawn in [that party's] favor.'"  <u>Hunt v.
Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Liberty Lobby</u>, 477
U.S. at 255).

Pineda-Morales had been able to practice his faith while in the East Compound. (Id.) The Apostolic Faith Church is a Christian church, but it rejects the "trinity" doctrine of Protestant churches. (Id. at 4.) The church baptizes its members in the name of Jesus Christ exclusively, instead of the Father, Son, and Holy Spirit. (Id.)

On August 16, 2000, Mr. Pineda-Morales requested scheduled services and the admission of outside church volunteers through the prison's administrative process. (Id. at Ex. A.) This request was denied, but Plaintiff was informed that he could attend Protestant services and meet with his Pastor in the visiting room. (Id. at Ex. A.) In December, Plaintiff filed another request for scheduled services three times a week, and repeated his request for approval of volunteers. (Id. at Ex. E1-E2.) He was informed that a only one weekly bible study was approved. (Id.) The Regional Director reiterated this determination on appeal. (Id. at Ex. D.)

On January 4, 2001, Plaintiff filed a new administrative request claiming that Chaplains Harden and Aziz harassed and threatened him, and treated him with bias against his faith. He also reiterated his request for multiple weekly services. (Id. at Ex. F1.) A correctional counselor replied that treatment he received was fair and impartial, and that only one weekly bible study was approved. (Id. at Ex. F2.) Mr. Pineda-Morales appealed

the issue of additional services, and Regional Director denied the request.  (<u>Id</u>. at Ex. G-H2.)  The Administrator of National Inmate Appeals affirmed the ruling in writing on July 30, 2001. (<u>Id</u>. at Ex. I2.)  Plaintiff filed the instant <u>pro se</u> Complaint two years later.

In the summary of his complaint, Plaintiff alleges violations of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc.  (<u>Id</u> at 1.)  He claims in Count 1 that the chaplains and the BOP violated his rights of free exercise under the First Amendment, and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (<u>Id</u>. at 8.)  In Count 2, Plaintiff claims that the Defendants conspired to deprive him of equal protection under the Fifth Amendment in failing to provide equal access to services, by pressuring him to attend Protestant services, by retaliating against him for using the administrative process, and by threatening to reveal his criminal background to church volunteers.[3]  (<u>Id</u>. at 9-10.)  Mr. Pineda-Morales further asserts in Count 3 that Warden De Rosa is

---

[3]Plaintiff's constitutional claims are recognized under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), where the Supreme Court established that an individual may recover damages for constitutional violations against federal employees.  Mr. Pineda-Morales can only recover under the First and Fifth Amendments if an implied cause of action exists under <u>Bivens</u> and its progeny.

liable for the violations by his subordinates under <u>respondeat</u> <u>superior</u>.

Plaintiff seeks the following relief: (1) a declaratory judgment stating that (a) the Apostolic Faith Church is an "independent religion" and protected as such under the First Amendment, and (b) that the BOP and defendants are enjoined from forcing members of the church to participate with Protestants; (2) an injunction ordering defendants to (a) allow him "reasonable access to the chapel," (b) allow at least two English and two Spanish Apostolic Faith services a week, (c) publish the services in the FCI's schedule, and (d) cease retaliating and discriminating against Mr. Pineda-Morales for using the administrative remedy process; (3) compensatory damages of $10,000 and attorney's fees against each defendant, punitive damages of $10,000 against the three chaplains, and such other relief "the Court may deem just and equitable." (<u>Id.</u> at 10-11.)

II.   <u>DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

Defendants moved for dismissal or summary judgment on all claims for the following reasons: (1) there is no constitutional cause of action against the BOP or the individual defendants in their official capacities; (2) Mr. De Rosa cannot be held liable under <u>respondeat</u> <u>superior</u> for the constitutional claims; (3) the claims for insufficient services and retaliation are barred by statute of limitations; (4) Plaintiff failed to exhaust statutory

5

and constitutional claims; (5) the statutory claims for
compensatory damages are impermissible under federal law; (6)
federal statutes bar a remedy on the constitutional claims; (7)
each defendant is entitled to qualified immunity under the
constitutional and statutory claims; (8) the statutory claims
against the chaplains should be dismissed because they did not
act under color of federal law; (9) Plaintiff failed to establish
a prima facie violation of federal statutes. (Def. Br. at i-ii.)

III. <u>STANDARDS FOR MOTION TO DISMISS OR FOR SUMMARY JUDGMENT</u>

Defendant moves for dismissal or summary judgment, without
specifying applicable rules.  Since the Plaintiff and Defendants
presented exhibits that were not excluded, the motion is
considered as one for summary judgment under Fed. R. Civ. P. 56.[4]

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the

---

[4] Rule 12(b) provides:

> [i]f, on a motion asserting the defense
> numbered (6) to dismiss for failure of the
> pleading to state a claim upon which relief
> can be granted, matters outside the pleadings
> are presented to and not excluded by the
> court, the motion shall be treated as one for
> summary judgment and disposed of as provided
> in Rule 56.

Fed. R. Civ. P. 12(b).

evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Partnership of Gepner and Ford, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

<u>DISCUSSION</u>

Mr. Pineda-Morales raises statutory and constitutional claims.  This Court will (1) address apparent confusion in the Complaint and Motion regarding the applicable statute; (2) discuss the issue of exhaustion, which requires the Court to dispose of certain constitutional and statutory claims; (3) discuss the statute of limitations, which eliminates Plaintiff's remaining constitutional claims; (4) discuss why Plaintiff's Complaint states two statutory claims that survive Defendants' Motion; (5) discuss why Plaintiff is not entitled to damages for these surviving statutory claims; and (6) explain why the chaplains should not be dismissed as non-federal actors.  Based on this consideration, the Court concludes that the instant motion should be granted in part and denied in part.

I.   <u>INAPPLICABILITY OF RLUIPA TO STATUTORY CLAIMS</u>

Plaintiff asserts causes of action under RLUIPA, and Defendants contest the substance of those claims.  This statute is not applicable to federal claims.  This case warrants a brief review of applicable legislative and Supreme Court history.

Congress enacted RFRA in 1993 "to restore the compelling interest test" to religious liberty claims after the Supreme Court's contrary holding in <u>Employment Division v. Smith</u>, 494 U.S. 872 (1990).  42 U.S.C.A. § 2000bb(a)(5), (b)(1).  The statute grants more expansive religious exercise rights than the

First Amendment.  RFRA is codified in Section 2000bb-1, which

provides:

> (a) . . . . Government shall not substantially burden a
> person's exercise of religion even if the burden results
> from a rule of general applicability, except as provided in
> subsection (b) of this section.
>
> (b) . . . . Government may substantially burden a person's
> exercise of religion only if it demonstrates that
> application of the burden to the person–
>> (1) is in furtherance of a compelling government
>> interest; and
>> (2) is the least restrictive means of furthering that
>> compelling government interest.
>
> (c) . . . . A person whose religious exercise has been
> burdened in violation of this section may assert that
> violation as a claim . . . in judicial proceeding and obtain
> appropriate relief against a government . . . .

Id at (b), (c).  Under the act, "the term 'government' includes a

branch, department, agency, and official . . . of the United

states . . . ."  42 U.S.C.A. § 2000bb-2(1).

The Supreme Court rendered RFRA unconstitutional as applied

to the states in City of Boerne v. Flores, 521 U.S. 507 (1997).

However, the law "remain[s] applicable to the federal government

. . . ."  Blackhawk v. Pennsylvannia, 381 F.3d 202, 212 (3d Cir.

2004).  Defendants concede that the statute is constitutional for

purposes of this claim.  (Def. Br. at 15.)

After Boerne, Congress enacted RLUIPA in 2000, which

reiterated the compelling interest test articulated in RFRA, but

is tied to federal funding or the commerce power.  42 U.S.C.A. §

2000cc-1(1), (2).  Under RLUIPA, a "government" held to the

standard is limited to "a State, county, municipality, or other government entity created under the authority of a State," or branch thereof, or "any other person acting under color of State law . . . ."  42 U.S.C.A. 2000cc-5(4).

Plaintiff frames Count I as a violation of RLUIPA.  (Compl. at 8.)  He is not entitled to relief under RLUIPA because the act only applies to state and local governments, not a federal prison.  42 U.S.C.A. 2000cc-5(4).  However, Plaintiff did allege violations of "RFRA and RLUIPA" in the summary of his complaint. (Compl. at 1.)  In <u>DeHart v. Horn</u>, 390 F.3d 262 (3d Cir. 2004), the court found that "RLUIPA ma[de] no change to the standard by which prisoners' free exercise claims" were reviewed under RFRA, and did not require a prisoner to re-exhaust his claim under the new statute.  <u>Id</u>. at 274.  With similar allowance, this Court identifies RFRA as the applicable law for Plaintiff's statutory claims, and notes that Defendants addressed both statutes in their motion.  This Court therefore disregards all references to RLUIPA in Plaintiff's and Defendants' submissions, and substitutes RFRA where necessary.

II.  <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

Defendants seek dismissal of several claims, arguing that Plaintiff failed to exhaust them through the prison's administrative system.  This Court agrees in part.  Defendants assert that Plaintiff is (1) barred from any claims against the three chaplains because he failed to name them in the

10

administrative process (Def. Br. at 11-12.); (2) barred from claims under RFRA because he did not mention the statute in the administrative process, or exhaust certain substantive issues (Id. at 11); and (3) barred from his constitutional retaliation claim because he failed to appeal the issue (Id. at 12.)  This Court disagrees with Defendants on the first ground, agrees in part on the second, and agrees in full on the third.

Under the Prisoner Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement extends to constitutional claims, as well as claims under federal statutes.  See Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000).

In this circuit, "failure to exhaust is an affirmative defense to be pleaded by the defendant."  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2001); Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002).  In Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), the Third Circuit provided guidance on exhaustion under PLRA. Without express federal standards for exhaustion, the court chose the "single, consistent set of procedural rules" in the prison's grievance process to "crafting judge-made law . . . ."  Id. at 231.  To do otherwise would ask inmates to comply with prison procedures "while keeping an eye on a separate set of federal

11

requirements . . . to ensure that they will preserve a remedy in federal court . . . ." Id. The yardstick for exhaustion, therefore, is defined by the grievance procedures of the institution. Id. The Spruill court found a claim for damages exhausted because an inmate was not required to request monetary relief in the grievance process, but he was required by that process to name individuals. Id. at 233-34.

Under Spruill, the administrative procedures of the FCI supply the measure of exhaustion for Mr. Pineda-Morales' claims. Under BOP regulations, inmates must exhaust a claim by raising it to the warden, appealing it to the Regional Director, and finally by appealing to the BOP Central Office, General Counsel. (Def.'s Decl. of K. Hebbon at 3.) Defendants succeed in part by proving Plaintiff failed to exhaust certain claims, but do not prove he failed to exhaust others.

A.   Claims against Chaplains Kugler, Harden, and Aziz

Defendants argue that Plaintiff's claims against the chaplains should be dismissed because he failed to name Chaplain Kugler at all, and failed to name Chaplains Aziz and Harden on appeal during the grievance process. (Def. Br. at 11-12.) This Court disagrees. It is true that Mr. Pineda-Morales made no mention of Chaplain Kugler in any administrative request, and that he failed to mention Chaplains Aziz and Harden on appeal. However, Defendants did not prove that Plaintiff was required by the prison grievance process to name individuals.

Mr. Pineda-Morales wrote on a grievance form that he "repeatedly talked with the Religious Services Dept. Staff, about facilitating his faith practice on the West Side." (Compl. at Ex. A.)  Plaintiff consistently argued that the chaplain staff failed to sufficiently accommodate his faith throughout the administrative process (Id. at Ex. A-Ex. I.)  Defendants provide no evidence that Mr. Pineda-Morales was required to name each chaplain individually.  Exhaustion of the claims against the chaplains is a genuine issue of material fact, and summary judgment is therefore denied.[5]

B.  Exhaustion of claims under RFRA

Defendants further contend that Plaintiff failed to exhaust his statutory claims on two grounds.[6]  First, he failed to identify RFRA during the administrative grievance process.  (Def. Br. at 11.)  Second, Plaintiff failed to exhaust any substantive issue except his request for two additional weekly bible studies.

---

[5]Defendants also assert that Plaintiff's respondeat superior claim against Warden DeRosa in Count III should be dismissed, because he may not be held liable solely under that doctrine. (Def. Br. at 7-8.)  Defendants only support this argument in reference to Plaintiff's constitutional Bivens claims, which are barred on other grounds.  Defendants present no reason why such liability should not attach under a RFRA claim.  This Court therefore makes no determination that would dismiss the claim against Warden DeRosa on the basis of Count III.

[6]As discussed supra, this Court views all references to RLUIPA in the Complaint and Motion as references to RFRA, the applicable statute.

(<u>Id</u>. at 12.)  This Court disagrees on the first ground, and
agrees in part on the second.

      1.  <u>Failure to identify the statute</u>

Defendants argue that Plaintiff is barred from raising a
statutory claim because he failed to reference the statute in the
grievance process.  (<u>Id</u>. at 11-12.)  Defendants rely on <u>DeHart</u>,
390 F.3d 262, to support this argument.  (Id. at 12.)  In DeHart,
the Third Circuit ruled for a state inmate by finding his
religious exercise grievance was exhausted despite a change in
law from RFRA to RLUIPA.  390 F.3d at 275.  Defendants here
contend that the inmate's identification of RFRA in the grievance
process was essential to the holding of <u>DeHart</u>.  (Def. Br. at
13.)  This Court disagrees.

The court in <u>DeHart</u> examined "the standard by which [the]
prisoner's free exercise claims are reviewed," under RLUIPA.  390
F.3d at 275.  It found that the prison staff was subject to the
same standard, even though the grievance arose when RFRA still
applied.  <u>Id</u>.  It was therefore unnecessary for an inmate to re-
exhaust a grievance when the new statute bound the states.  <u>Id</u>.
This Court finds nothing in <u>DeHart</u> that required the inmate to
identify a statute in his grievance in order to exhaust a claim.

Instead, this Court again turns to <u>Spruill</u>, which requires
only that an inmate follow the rules of the prison grievance
process to exhaust a claim.  372 F.3d at 231.  Plaintiff here
consistently asked for increased accommodations for his faith in

14

the West Compound.  (Compl. at Ex. A-Ex. I.)  He invoked Title
42, under which RFRA is codified.  (Id. at Ex. A1.)  He also
identified specific prison regulations that he claimed were
violated.  (Id. at Ex. I.)  Plaintiff additionally warned that he
would file suit if his requests were not met.  (Id. at Ex. E2.)
Defendants provide no evidence that Plaintiff's requests failed
to comply with the requirements of the prison's administrative
process for a religious exercise grievance.  Without such
evidence, this Court cannot determine as a matter of law that
Plaintiff failed to exhaust any claim under RFRA.  The
Defendants' motion for summary judgment is therefore denied on
this ground.

      2.  <u>Exhaustion of substantive RFRA issues</u>

     Defendants contend that the substance of all claims, except
Plaintiff's request for two additional bible studies, are barred
by failure to exhaust.  (Def. Br. at 11-12.)  This Court agrees
in part.  Three different arguments for relief in Count I may be
cognizable as RFRA violations: (1) Defendants substantially
burdened Plaintiff's exercise of religion by failing to recognize
the Apostolic Faith Church as an independent religion, (2)
Defendants substantially burdened Plaintiff's exercise of
religion by pressuring him to attend Protestant services, and (3)
Defendants substantially burdened Plaintiff's exercise of
religion by eliminating the Apostolic Faith Church from the FCI's
religious services schedule.  (Compl. at 8.)  Defendants assert

that the only substantive issue Plaintiff exhausted was a request for two additional bible studies.  (Def. Br. at 12.)  This Court concludes that only the scheduling claim is barred for failure to exhaust.

First, this Court disagrees that Plaintiff failed to exhaust his claim for independent recognition of his church.  In his final administrative appeal, Plaintiff argued that he could not be accommodated through existing Protestant services.  (Compl. at Ex. I.)  He stated "the teachings between the Apostolic Church and Protestant have [many] differences" and "the Apostolic Church is not '[a]nother' denomination" because it does not adhere to the "trinity" doctrine.  (Id.)

Plaintiff consistently claimed, throughout the administrative process, that his faith was inconsistent with the established Protestant faiths in the FCI, and the respondents disagreed.  (Id. at Ex. F-H2.)  Plaintiff did not specifically request official recognition of his church.  However, he did address the incompatibility between the Apostolic Faith Church and Protestant faiths.  This Court cannot say as a matter of law that Mr. Pineda-Morales failed to raise the issue of official recognition of the Apostolic Faith Church.

Second, this Court makes no determination regarding the exhaustion of Plaintiff's requests for additional physical accommodations separate from the Protestant activities.  Mr. Pineda-Morales argues in his Complaint that the Defendants

16

imposed their beliefs that he should attend Protestant services. (Compl. at 8.)  This Court views this argument as a continuation of Plaintiff's repeated administrative requests for additional use of the prison's religious facilities by his church. Defendant concedes that Plaintiff exhausted his requests for additional bible studies.  (Def. Br. at 12.)  This Court therefore makes no determination regarding the exhaustion of Plaintiff's claim that he was pressured to attend Protestant activities in violation of RFRA.

Third, this Court agrees that Plaintiff failed to exhaust his scheduling claim.  Mr. Pineda-Morales argues that his right to religious exercise was violated when Defendants "eliminated the Apostolic Faith Church from the institution's religious services schedule in order to discourage" the church's activities.  (Compl. at 8.)  Plaintiff asserts that schedule was released on February 17, 2002.  (Id. at 7.)  Mr. Pineda-Morales's final appeal to the BOP was dated May 27, 2001, and neither it, nor any previous request, cited the removal of his church from the religious schedule.  (Id. at Ex. I.)  In fact, the BOP's response reiterated that the Apostolic Faith Church was granted a weekly bible study.  (Id. at Ex. I2.)  Plaintiff did not raise this issue at all in the administrative process and the Warden, the Regional Director, and the BOP were denied any opportunity to investigate and potentially resolve it.  Based on Plaintiff's own submissions, this issue was not exhausted.

17

Summary judgment is therefore granted for Defendants regarding Plaintiff's Count I schedule removal claim, but denied for Plaintiff's independent church recognition and imposition of religious beliefs claims under RFRA.

C.   <u>Exhaustion of constitutional retaliation claim</u>

Defendants contend that Plaintiff's retaliation claim is barred because he failed to raise the issue on appeal.  (Def. Br. at 13.)  This Court agrees.  Mr. Pineda-Morales alleges in Count II that the Defendants' "conspire[d] and confederate[d] . . . to deprive him of equal protection" by "retaliating" against him for using the administrative process and "[i]ntimidating" him from bringing in Apostolic Faith volunteers.  (Compl. at 9, 10.)

In the prison grievance process, Plaintiff filed an "Informal Resolution Form," claiming Chaplains Harden and Aziz "threatened and intimidated" him out of disdain for the Apostolic Faith Church.  (<u>Id</u>. at Ex. F1.)  Mr. Pineda-Morales requested an apology for the conduct.  (<u>Id</u>.)  A correctional counselor replied to the request stating "[t]he treatment [he] received from the Chaplains was fair and impartial" and "there is no evidence to support [his] claims that [they] harassed, intimidated, or threatened" him.  (<u>Id</u>. at F2.)

Mr. Pineda-Morales did not revisit this substance of this issue in any form in his future appeals.  The Regional Director and the BOP were denied any opportunity to investigate Plaintiff's retaliation claim, and afford him relief if

18

warranted.  Summary judgment is therefore granted for Defendants on Plaintiff's constitutional retaliation claim in Count II.

III. <u>STATUTE OF LIMITATIONS</u>

Defendants next contend that Plaintiff's constitutional and RFRA claims are barred by the running of the statute of limitations.  (Def. Br. at 8-9.)  This Court agrees in part, finding that Plaintiff's RFRA claims are not barred by the statute of limitations, but his remaining constitutional free exercise and equal protection claims are.[7]

A.    <u>Statute of Limitations for RFRA Claims</u>

Mr. Pineda-Morales was notified on July 30, 2001 that his final appeal for extra bible studies was rejected by the BOP.  (Compl. at Ex. I2.)  He filed the instant complaint on September 15, 2003, two years and forty-seven days later.  Defendants, allowing that this establishes the latest possible date of accrual, claim that recovery under RFRA is barred because a two-year statute of limitations had expired. (Def. Br. at 9.)  This is an application of superceded law.

Defendants argue that because RFRA does not "contain a statute of limitations, it is appropriate to borrow from the state statute," (<u>Id</u>.), basing this conclusion on <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985).  Defendants assert that New Jersey's

---

[7]Defendants treat the constitutional and statutory claims together, but different statutes of limitations apply to each. The Court will accordingly treat them in turn below.

two-year statute of limitations for personal torts under N.J.S.A. 2A:14-2 is the most appropriate. (Def. Br. at 9.)  Such an analysis was pre-empted by Congress.

In response to the confusion and judicial difficulties that arose from applying state limitations to federal actions, Congress established a general statute of limitations in 1990. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 379-80 (2004).  Section 42 U.S.C. 1658(a) provides: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C.A. § 1658(a).

RFRA was enacted in 1993, and § 1658 therefore applies to claims arising under it.  See, e.g., Jama v. U.S. INS, 343 F.Supp.2d 338, 365 (D.N.J. 2004) ("RFRA has a statutory four-year statute of limitations.").  Thus, Mr. Pineda-Morales had four years to file his action from the time the cause accrued.  The first event cited by Plaintiff to support his complaint took place in March, 2000. (Compl. at 3.)  Assuming arguendo that the claim accrued at that earliest possible date, and that Plaintiff gained no benefit of tolling, the complaint filed in September 2003 was still timely for the purposes of his RFRA claim. Therefore, this Court denies Defendants' summary judgment on Plaintiff's RFRA claims on this ground.

B.   <u>Statute of Limitations for Constitutional Claims</u>

Plaintiff's constitutional claims are subject to different statute of limitations treatment than his RFRA claims.  Section 1658(a) does not apply to <u>Bivens</u> constitutional claims because they do not arise under an act of Congress after 1990.  Defendant argues that <u>Wilson</u> applies to establish the statute of limitations for Plaintiff's constitutional claims.  (Def. Br. at 9.)  This Court agrees.

In <u>Wilson</u>, the Supreme Court established a standard approach to determine the statute of limitations for civil rights claims against the states under 42 U.S.C. § 1983.  471 U.S. 261.  Since § 1983 contains no express limitation, the Court applied 42 U.S.C. § 1988, which borrows the "most appropriate" or "most analogous" state statute of limitations.  <u>Id</u>. at 268.  The Court decided that a "simple, broad characterization" of all claims under § 1983 avoided the "uncertainty and time-consuming litigation" inherent in analyzing the facts in each particular claim.  <u>Id</u>. at 273.  The Court found that a state's limitation for recovering damages for personal injury torts was the appropriate choice.  <u>Id</u>. at 279-280.

For § 1983 claims arising in New Jersey, N.J.S.A. 2A:14-2 applies and dictates a two-year statute of limitations.  <u>Cito v. Bridgewater Township Police Dep't</u>, 892 F.2d 23, 25 (3d Cir. 1989).  This Circuit has not definitively ruled that the same statute of limitations applies universally to all <u>Bivens</u> and §

1983 claims, but the issue was raised in dictum.  Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers, 855 F.2d 1080, 1088 (3d Cir. 1988).  The practice is settled in other circuits.  See, e.g., Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987); Reinbold v. Evers, 187 F.3d 348, 359n.10 (4th Cir. 1999); King v. One Unknown Federal Correctional Officer, 201 F.3d 910, 913 (7th Cir. 2000.); Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995.); Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996).  Alternately, this Court finds no more appropriate statute of limitations than N.J.S.A. 2A:14-2, and Plaintiff offers no alternative.  Therefore, a two-year statute of limitations applies to Plaintiff's constitutional claims.

Mr. Cunningham responds by claiming that the retaliation he suffered was an "ongoing violation," up the date of his reply. (Plaint. Reply Br. at 2.)  Because Plaintiff's retaliation claim is barred by his failure to exhaust it, this Court does reach this issue.

Even if this Court were to infer from Mr. Pineda-Morales' reply that he also asserts that the denial of additional Apostolic Faith services was a continuing violation, the argument would fail.  Continuing violation doctrine focuses on "affirmative acts of the defendant," and is not "a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  Cowell v. Palmer Township,

22

263 F.3d 286, 293, 295 (3d Cir. 2001).  The last action taken by any defendant on the matter was the BOP's conclusive rejection of Plaintiff's request for additional bible studies on July 30, 2001.  (Compl. at I2.)  Plaintiff filed his complaint two years and forty-seven days later.  Assuming <u>arguendo</u> that Plaintiff's cause of action accrued on the same day he resorted to the administrative process, and that the statute was tolled until that process was exhausted, his constitutional claims were not timely.  There is no genuine issue of material fact with regard to this issue, and summary judgment for the Defendants is granted.[8]

IV.  <u>PRIMA FACIE VIOLATION OF RFRA</u>

Defendants assert that Mr. Pineda-Morales failed to state a claim under RFRA.  (Def. Br. at 38-40.)  Plaintiff's burden for establishing a prima facie RFRA violation extends no further than alleging his "exercise of religion" was "substantially burdened." 42 U.S.C. § 2000bb-1(a).  Upon such a showing, the burden shifts to the Defendant to demonstrate that the burden "is in furtherance of a compelling government interest," and "is the least restrictive means of furthering that" interest.  42 U.S.C. § 2000bb-1(b).

---

[8]Since Plaintiff's constitutional claims are barred by failure to exhaust or the statute of limitations, the Court does not reach Defendants' arguments that the claims fail under <u>Bivens</u>, that <u>respondeat</u> <u>superior</u> is inapplicable, or that qualified immunity applies to them.  (Def. Br. at 5, 7, 20.)

When Congress enacted RLUIPA in 2000, it also changed the
definition of "exercise of religion" under RFRA by supplying the
same definition for both acts.  42 U.S.C. 2000bb-2(4).  Prior to
the amendment, RFRA defined exercise of religion as "the exercise
of religion under the First Amendment," and many courts required
that exercise to be "central" to the religion.  See Adkins v.
Kaspar, 393 F.3d 559, 568 n.33 (5th Cir. 2004).  The amendment,
however, supplied a more expansive definition: "The term
'religious exercise' includes any exercise of religion, whether
or not compelled by, or central to, a system of religious
belief."  42 U.S.C. §§ 2000bb-2(4), 2000cc-5(7)(A).  Thus, any
narrow interpretation of "substantial burden" under RFRA prior to
the amendment must be viewed skeptically.

Defendants correctly state that application of this standard
varies widely.  (Def. Br. at 38.)  However, Defendants seek to
supply a rule from Henderson v. Kennedy, 265 F.3d 1072 (D.C.Cir.
2001) (finding no substantial burden where religious group was
restricted from selling T-shirts on the National Mall, but had
numerous alternatives).  This Court finds applications pertaining
to religious exercise in prisons to be more probative.  This
Circuit applied RFRA in several cases involving state prisons.
Although RFRA no longer applies against the states, this Court
finds the application of its standard in these cases to be
informative.

A district court applied pre-amendment RFRA in a claim involving prison tuberculosis tests. Karolis v. New Jersey Department of Corrections, 935 F.Supp. 523 (D.N.J. 1996) (finding injection test a substantial burden on adherent of Christian Science, but that it was permissible as the least restrictive means to achieve a compelling prison interest in preventing tuberculosis). In an unreported case, another district court found a requirement for an inmate to register for Muslim services not to be a substantial burden. Austin v. Guarini, 1997 WL 47566 (E.D.Pa.). In Small v. Lehman, 98 F.3d 762 (3d Cir. 1996), the Third Circuit applied RFRA to a set of facts similar to those alleged by Mr. Pineda-Morales. Although this case was prior to the amendment, the court still applied the substantial burden standard expansively.

In Small, Sunni Muslim inmates requested separate space for religious services, citing fundamental differences between their beliefs and those professed at the existing Muslim services. Id. at 764-65. The plaintiffs asserted that there were unused areas that could accommodate their services without additional burdens on the prison. Id. at 765. The court rejected summary judgment for the defendants, finding the substantial burden issue "in serious dispute" under RFRA. Id. at 768. The court stated "the opportunity to worship as a congregation by a substantial number of prisoners may be a basic religious experience and, therefore a

25

fundamental exercise of religion . . . .”  Id. at 767.
Furthermore, when the only service “available [to] a prisoner is
under the guidance of someone whose beliefs are significantly
different from or obnoxious to his, the prisoner has been
effectively denied the opportunity for group worship and the
result may amount to a substantial burden on the exercise of his
religion.”  Id. at 767 n.7 (quoting Weir v. Nix, 890 F.Supp. 769,
788 (S.D.Iowa 1995)).  The Court of Appeals has thus placed
importance on a prisoner’s ability to congregate, even before the
definition of religious exercise under RFRA expanded.

Making reasonable inferences in Plaintiff’s favor, the
submissions provide that Mr. Pineda-Morales, while incarcerated
in the FCI’s East Compound, was able to participate in regular
Apostolic Faith activities.  (Compl. at 3.)  The West Compound,
where he was transferred, offered no such accommodations.  (Id.)
In or about March, 2000, Plaintiff requested from Chaplains Aziz
and Harden permission to conduct Apostolic Faith services in the
West Compound with the assistance of willing outside volunteers.
(Id.)  More than 20 other members of the Apostolic Faith Church
made similar requests.[9]  (Id. at Ex. C.)

_____

[9]Defendants assert that there are six members of the
Apostolic Faith Church in the West Compound, and fifteen in the
East, apparently at the time of the Motion.  (Def. Br. at 40.)
This Court defers to Plaintiff’s assertion that more than 20
prisoners requested accommodation for the church in the West
Compound.  It is also a reasonable inference that the Chaplains’
failure to accommodate additional Apostolic Faith services

The requests were denied, and Mr. Pineda-Morales was told he would have to participate in Protestant services.   (Id. at 3.) According to Plaintiff, the "trinity doctrine" of the Protestant denominations is inconsistent with the teaching of Apostolic Faith Church.  (Id. at Ex. C.)  The church has more than 3,500 organizations in the United States, and provides services in many federal institutions.  (Id. at Ex. B2.)  Because volunteers were not permitted to assist members of that faith, inmates were unable to be baptized according to its teachings or congregate in services.  (Id.)

Mr. Pineda-Morales resorted to the prison's administrative remedy system.  (Id. at 4.)  The Regional Director replied to an appeal, stating that the Apostolic Faith Church was granted a single weekly bible study, and outside volunteers were approved. (Id. at 6.)  Plaintiff met some resistance from Chaplains Harden and Aziz in implementing this accommodation, and he again resorted to the administrative process.  (Id. at Ex. F1-H1.)  At some point the approved bible study began, and Plaintiff appealed to the Regional Director again, asking for two additional weekly bible studies.  (Id. at Ex. H1.)  At that point, Plaintiff's "only concern and remedy [was] for the Apostolic Bible Study

---

resulted in a decline in interest over the course of almost five years.  In any event, the threshold question remains whether or not Plaintiff's personal religious rights were substantially burdened.

27

group [to] be granted additional time to practice our religious teachings." (Id.)  Mr. Pineda-Morales claimed that failure to do so would demonstrate "favoritism" or "preferential treatment" since other religious groups had significantly greater access to the religious facilities. (Id.)

The Regional Director rejected the additional bible studies, and Plaintiff appealed to the BOP. (Id. at Ex. I.)  He again claimed the staff violated prison regulations prohibiting "preferential treatment," since Jewish inmates had daily access to religious facilities and outside volunteers. (Id.)  He asked for additional Apostolic Church meetings on Friday and Saturday, to complement the existing Monday meetings, in order for the inmates to "practice [their] religion in a more meaningful manner." (Id.)  If two additional meetings could not be accommodated, then he only sought "the additional Saturday" meeting. (Id.)  The BOP denied his request. (Id. at I2.)

Plaintiff was accommodated with one weekly independent meeting for his faith, and his case is weaker than the inmates in Small who had no ability to congregate independently.  However, this Court cannot say that the prison's failure to identify the church as an independent group, or provide it additional use of the religious facilities, was not a "substantial burden" on Plaintiff's "exercise of religion, whether or not compelled by, or central to," the beliefs of the Apostolic Faith Church.  42

U.S.C. § 2000cc-5(7)(A).  This Court can also infer that the lack of accommodations in the West Compound exerted pressure on Mr. Pineda-Morales and members of his congregation to abandon their faith or attend services that espoused contrary beliefs.

Defendants contend that Mr. Pineda-Morales was not substantially burdened because he could "attend the Christian worship services, attend the Apostolic bible study[,] . . . attend other bible studies, receive guidance from outside Apostolic volunteers[,] . . . and study his bible during his own free time."  (Def. Br. at 39.)  For the purposes of this motion, this Court assumes that the other Christian services were not valid alternatives, thus leaving one weekly bible study in which Plaintiff could congregate.  This Court cannot say as a matter of law this was not a substantial burden on his religious practice under the demanding standard established by Congress.  Again, where Congress has supplied an expansive definition of the protections afforded to the exercise of religion, this Court's review of whether a central tenet of the faith is burdened by the BOP's restrictions is immaterial.

This determination does not end the analysis, however.  The burden shifts to the Defendants to demonstrate that their policies were the least restrictive means of achieving a compelling government interest.  42 U.S.C. § 2000bb-1(b).  This Court agrees with the Defendants that the government has "a

compelling interest under RFRA in maintaining institutional safety and order." (Def. Br. at 39.) This Court also understands the challenges faced by a chaplain staff serving "approximately 4,600 inmates representing many various religious backgrounds" with "two chapels . . . and nine classrooms." (Def.'s Decl. of Chaplain Harden at 5.) The analysis then turns to whether or not Defendants' policies were the least restrictive means.

Defendants present prison regulations, and describe how religious facilities are allotted generally. (Id. at 4, Ex. 2A.) However, Defendants present no evidence that refusing to recognize the Apostolic Faith Church, or provide it additional physical accommodations, was the least restrictive means of furthering the prison's compelling interests. Plaintiff claims that additional religious rooms were available at the time. (Compl. at 10.) Furthermore, Defendants do not present evidence that the relevant prison regulations were followed in Mr. Pineda-Morales' case, and if they were, that those regulations comport with RFRA. Upon the present record, there is a genuine dispute as to the material fact whether the BOP employed the least restrictive means of achieving institutional safety and order by denying denominational recognition and by denying the Saturday meeting time to Plaintiff's religious group, and the motion for summary judgment on this ground is denied.

30

V.   <u>REMEDIES AVAILABLE</u>

Defendants argue that (1) damages are unavailable under RFRA against the Defendants in their official capacities because the statute does not waive sovereign immunity (<u>Id</u>. at 14), and (2) individual Defendants are immune from civil damages under RFRA through qualified immunity.  This Court agrees in both instances.[10]

A.   <u>Damages Against BOP and Chaplains in Official Capacity</u>

In order to sustain a claim for damages against the federal government, the "waiver of . . . sovereign immunity must be unequivocally expressed in statutory text" and that waiver "must extend unambiguously to such monetary claims."  <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation . . . in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. §

_____

[10]Because damages are unavailable on other grounds, it is unnecessary to reach Defendants' argument that compensatory damages are barred by 42 U.S.C. § 1997(e).  (Def. Br. at 13.)  However, this Court notes that Section 1997(e) provides "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody <u>without a proper showing of physical injury</u>."  42 U.S.C. § 1997(e) (emphasis added).  Plaintiff incorrectly counters that his claim arose before enactment of this section.  (Plaint. Reply Br. at 3.)  Since Plaintiff did not allege a physical injury, this section would bar compensatory damages, but would have no effect on nominal or punitive damages, or declaratory or equitable relief.  <u>See</u>, <u>e.g.</u>, <u>Mitchell v. Horn</u>, 318 F.3d 523, 533 (3d Cir. 2003).

2000bb-1(c).  This Court does not find that "appropriate relief"
extends unambiguously to monetary claims.  This is consistent
with the determinations of other courts.  <u>Jama v. United States
Immigration and Naturalization Service</u>, 343 F.Supp.2d 338, 373
(N.J. 2004); <u>Meyer v. Federal Bureau of Prisons</u>, 929 F.Supp. 10,
13-14 (D.D.C. 1996); <u>Tinsley v. Pittari</u>, 952 F.Supp. 384, 389
(N.D.Texas 1996).  Summary judgment is therefore granted for
Defendants in their official capacities striking all claims for
monetary damages under RFRA.

    B.   <u>Qualified Immunity of Chaplains from RFRA Damages</u>

Defendants argue that the statutory claims for damages
against Warden De Rosa, Chaplain Harden, Chaplain Aziz, and
Chaplain Kugler in their individual capacities should be barred
by qualified immunity.[11] (Def. Br. at 32.)  This Court agrees.

The Supreme Court held that "government officials performing
discretionary functions generally are shielded from liability for
civil damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457
U.S. 800, 818 (1982).  The issue of qualified immunity should be
resolved "at the earliest possible stage in litigation."  <u>Saucier</u>

---

     [11]Since Plaintiff's constitutional claims are barred by
failure to exhaust or the statute of limitations, this Court does
not reach Defendants' argument that qualified immunity applies to
them.

v. Katz, 533 U.S. 194, 201 (2001) (quoting Hunter v. Bryant, 502
U.S. 224, 227 (1991)).  When it applies, qualified immunity
serves only to shield officials from monetary damages, and does
not eliminate them from suits also seeking proscriptive relief.
See Schrob v. Catterson, 967 F.2d 929, 939 (3d Cir. 1992).

     As discussed above, Mr. Pineda-Morales states a claim of
RFRA violations by the chaplains.  This Court therefore confronts
the next issue in the qualified immunity analysis; whether or not
Plaintiff's rights under RFRA were clearly established at the
time of the violations.  Defendants assert that RFRA's religious
exercise standard was not clearly established at the time of the
alleged violations.  (Def. Br. at 22.)  This Court agrees.
RFRA's substantial burden standard was overhauled during the
events alleged in this case, and it has been infrequently
litigated since then, particularly in the unique prison context.
Where, as here, "the law at the time was not clearly established,
an official could not reasonably be expected to anticipate
subsequent legal developments, nor could he fairly be said to
'know' that the law forbade conduct not previously identified as
unlawful."  Harlow, 457 U.S. at 818.

     Plaintiff's two remaining claims under RFRA are that his
church was denied recognition as an independent faith, and was
denied adequate use of the religious facilities.  The text of §
2000bb does not clearly establish that either of these

33

allegations were substantial burdens on Plaintiff's religious exercise.  Even if it did, nothing in the text indicates that such results were not the least restrictive means to further compelling government interests.  Caselaw on the matter yields little more clarity.  This Court finds no authority applying RFRA that speaks to the amount of access a religious group should have to facilities, or on what terms a faith should be recognized as independent by the BOP.  Surely the allocation of resources for religious facilities among 4,500 inmates, and the recognition of alleged doctrinal differences between Plaintiff's Christian beliefs and those of the members of other Christian denominations, are matters unaddressed by the statute and by binding precedent.  That the Defendants permitted one group bible study for Plaintiff's group, but not additional meetings, is not the type of conduct that a reasonable prison official would know to violate the prisoner's RFRA rights.  Since the prison officials were not on notice that their conduct violated RFRA, they are entitled to qualified immunity, and summary judgment on damage claims against them is granted.  Therefore, Plaintiff is unable to obtain monetary damages against the Defendants in their official or individual capacities.

VI.   CHAPLAINS AS ACTORS UNDER FEDERAL LAW FOR RFRA CLAIM

      Defendants contend that the claims should be dismissed against the chaplains because they used professional judgment and

34

did not act under federal law for the purposes of RFRA.  RFRA

provides that a claimant may seek "relief against a government"

where "the term 'government' includes a branch, department,

agency, and official (or other person acting under color of law)

of the United States . . .."  42 U.S.C.A. § 2000bb-1, bb-2.

Defendants argue that the Chaplains did not act as "persons under

federal law, a requirement for liability under the statutes."

(Def. Br. at 38.)

    To support their argument, Defendants point to a single case

from another circuit which analogized a chaplain to a public

defender for a § 1983 civil rights claim.  Montano v. Hedgepeth,

120 F.3d 844 (8th Cir. 1997).  This Court finds their argument

unpersuasive.  First, the issue in Montano was whether the

government should be liable for the actions of an employee.

Defendants here argue that the employees should not be liable for

their own actions, with no mention of the government's liability.

Second, this Court does not find a § 1983 constitutional action

comparable to a claim under RFRA.  RFRA establishes an

independent statutory standard, and expressly holds federal

officials to that standard.  For these reasons, this Court denies

judgment for the Defendants on this ground.

CONCLUSION

    For the reasons explained above, the Court grants summary

judgment for the Defendants on all of Plaintiff's constitutional

35

claims and upon Plaintiff's claim that Defendants violated his statutory rights by removing the Apostolic Faith Church from the prison's religious schedule.  Furthermore, the Court grants summary judgment for all Defendants for damage claims in their official or individual capacities.  The Court denies summary judgment on Plaintiff's claims that failure to recognize the Apostolic Faith Church, or to provide sufficient accommodations independent of Protestant services, violated RFRA because material facts are in dispute.  The Court also denies summary judgment removing any defendants from this remaining RFRA claim for injunctive or declaratory relief.

The accompanying Order is entered.




**July 6, 2005**                  **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        U.S. District Court